A. BECK ET AL. v. S. TARRANT.

(Case No. 5008.)

1. LIMITATION — VENDOR'S LIEN.— In a proceeding to revive a personal judgment on a promissory note, and to enforce against a purchaser from the original vendee a vendor's lien on land for which the note was given, held, that the judgment which relieved the debt from limitation preserved the vendor's lien, though limitation in the absence of the judgment would have run against the note; and so long as the vendor's lien thus preserved existed, it was a foundation against subsequent purchasers of the land for a foreclosure of the lien.

2. SAME.— The statute of limitations begins to run between co-sureties at the time the debt is paid, irrespective of the time when the obligation was entered into or became due.

3. SUBROGATION — VENDOR'S LIEN.— One whose land is bound equally with that of another for the satisfaction of a vendor's lien, and who pays off a judgment for the debt, is entitled to contribution from the other; and in order to subject the land of such other to its proportional part of the judgment, he may be subrogated to all the rights of the plaintiff in the original judgment, and foreclose the vendor's lien.

Appeal from Collin. Tried below before the Hon. Richard Maltbie.

January 11, 1876, Hardin Hart sold S. M. Loggins one hundred and sixty acres of land, and executed a deed to the same. Loggins, in part payment for the land, gave his note to Hart for $340, due January 1, 1879. The deed recited the note, and the note referred to the land. The deed was recorded October 16, 1876. Loggins sold the land to Calvin and Thomas Stacy, and made them a joint deed which was recorded October 16, 1876. At that time Calvin and Thomas Stacy knew of the note to Hart, and the deed from Hart to Loggins. The Stacys divided their land between them, and each settled on his respective share. On the 22d of August, 1877, Calvin Stacy sold his half to S. Tarrant, and made him a deed. Tarrant knew of the existence of the note of Loggins to Hart, and deed from Hart to Loggins. On the 9th of December, 1877, Stacy died intestate, and left E. J. Stacy and Thos. M. Stacy his heirs. There was no administration on his estate. His widow married A. Beck. In the meantime, Hart transferred the Loggins note to J. A. Askey, who sued on same April 3, 1879, making S. M. Loggins, S. Tarrant, appellee, and A. Beck parties, but not making E. J. Beck and Thomas M. Stacy, Jr., or the estate of Thos. Stacy, deceased, parties. On January 4, 1883, Askey recovered a personal judgment against Loggins, and a decree foreclosing the vendor's lien on all the land sold by Hart to Loggins. March 1, 1883, an order of sale was issued to sell. April 3, 1883, the day of sale, S. Tarrant paid the sheriff $560.81 in full satisfaction of the judgment, and to prevent his own land from being sold. May 22, 1883, Tarrant, appellee, brought suit against A. Beck, E. J. Beck and Thomas M. Stacy, Jr., asking to be subrogated to the rights of J. A. Askey, under the judgment recovered by him against Loggins, Tarrant *et al.*, and also praying for a foreclosure of vendor's lien on their land to satisfy one-half of the judgment paid by Tarrant to Askey. Defendants answered January 8, 1884, and demurred generally and specially to Tarrant's petition, and pleaded general denial and specially. They specially excepted because petition did not contain sufficient equity on its face to entitle plaintiff to relief. They pleaded that they were not parties to judgment of Askey *v.* Loggins; that Tarrant had paid the judgment in full to save his own land, and not for defendants' benefit; that the lien sought to be enforced was a stale demand and barred by limitations, no suit having been brought against defendants or their land, or against the estate of Thos. Stacy, deceased, within four years after a cause of action

had accrued on the original note against them or either of them. The general demurrer and special exceptions were overruled, and final judgment rendered against defendants decreeing land to be sold, etc, January 28, 1884.

*Jenkins & Pearson,* for appellants, cited: Elliott *v.* Blanc, 54 Tex., 216; Hobby's Land Law, sec. 1406, and authorities there cited; Riggs *v.* Hanrick, Texas Law Review, vol. 2, p. 103; Wofford *v.* Unger, 55 Tex., 483 *et seq.;* Shelton *v.* Tanner, 9 Bush (Ky.), 314; arts. 2035, 3205, 3207, 3218, sec. 2, art. 1874, R. S.; Duty *v.* Graham, 12 Tex., 427 *et seq.;* art. 1206, R. S.; Read *v.* Allen, 56 Tex., 194, 195; Jeffus *v.* Allen, 56 Tex., 195; Baker *v.* Compton, 52 Tex., 261; Thompson *et al. v.* Jones *et al.,* Tex. Law Review, vol. 2, pp. 115, 116; Sublett *v.* McKinney, 19 Tex., 438 *et seq.;* Williams *v.* Durst, 25 Tex., 679 *et seq.*

*Throckmorton & Brown,* for appellee, cited: Perkins *v.* Sterne, 23 Tex., 561; McAlpin *v.* Burnett, 19 Tex., 500; R. C., art. 3218; Roosevelt *v.* Davis, 49 Tex., 463; Angell on Limitation (May's edition), secs. 131, 132, 133, 134 and 135, and note 4 to sec. 133, p. 115; note 1 to sec. 135, p. 116; Burns *v.* Ledbetter, 54 Tex., 385, and authorities there cited; French *v.* Grenet, 57 Tex., 281, and authorities cited; Black *v.* Epperson, 40 Tex., 162; Willson *v.* Phillips, 27 Tex., 545; Story's Eq. Jur., sec. 477; Sheldon on Subrogation, secs. 3, 4, 8, 9, 11, 106 and 109; Pomeroy's Eq. Jur., vol. 3, secs. 1220, 1221 and 1222.

WILLIE, CHIEF JUSTICE.— One of the principal points raised in this case has been already decided in the case of Slaughter *v.* Owens, 2 Texas Law Review, p. 285.

In that case the makers of a note secured by a vendor's lien had been sued within the period of limitation and a personal judgment had been obtained against them. Subsequently, and after limitation would have barred a recovery upon the note, but not upon the judgment, a proceeding was commenced to revive the latter and enforce the vendor's lien as against a purchaser from the original vendees of the land for which the note was given. It was held that the judgment kept the debt alive and preserved the vendor's lien, and, so long as it was subsisting and valid as a personal claim against the defendants therein, it existed also as a foundation for proceeding against a purchaser from them to foreclose the vendor's lien.

The debt secured by the vendor's lien was therefore a subsisting one at the time the lien was lifted from the land of appellants by the payment of the judgment, as well as at the date of the commencement of this suit.

This view dispenses with a consideration of the position taken by appellants, that their land occupied the place of a surety for the payment of Loggins' debt, and when that debt was four years old it could not be enforced against the land. But if this be true, Tarrant's land was a co-surety for the payment of the same debt, and this having been satisfied while the lien subsisted, limitation ran in favor of appellants from the date of the payment of the judgment and not of the execution of the note.

"The statute of limitations begins to run between co-sureties at the time the debt is paid, irrespective of the time when the obligation was entered into or became due." Brandt on Suretyship, § 259.

The same author also announces the rule of law to be, that "where suit is commenced against one of two co-sureties before the debt is barred and judgment is recovered against him, and the debt is paid by him after the time when the statute would have been a bar, if no suit had been previously brought, and after the debt is barred against the co-surety, the statute begins to run between the sureties from the time of payment; and the surety who pays may recover contribution from his co-surety at any time after such payment and within the statutory limitation." Id.

It is not absolutely necessary for the affirmance of this case that we should go this far, but under the theory of counsel for appellants, that their lands and that of Tarrant were co-sureties for Loggins' debt, it would establish that the claim of appellee for contribution was not barred by limitation.

The statute of limitations not barring the claim, there can be no doubt of the right of Tarrant to the relief asked by him and granted below. The case presented is that of a common charge resting upon land belonging one-half to Tarrant and the other to the appellees. These owners "stand upon an equality with respect to their individual titles and relations with the holder of the charge." The maker of the note (Loggins) conveyed to Stacy, under whom appellants claim, and to Calvin, under whom the appellees deraign title in equal shares, at the same time and in the same deed. As between the owners of the land at the time judgment was paid, and Loggins, who stood in the position of an original mortgagee, neither had a right to demand that the other's portion should be first subjected to

the mortgage debt. The equities between themselves being equal, and one having redeemed, he is entitled to a *pro rata* contribution from the other owners, and may keep the lien alive by equitable assignment as security for such contribution. For the above doctrines see 3 Pom. on Equity, sec. 1222.

"This doctrine," says the above writer, "is a simple application of the maxim, 'Equality is equity,'" and "the doctrine of contribution" among such parties, and of "equitable assignment to secure such contribution," are the efficient means by which equity completely and most beautifully works out perfect justice and equality of burden under these circumstances. Id., and sec. 1221.

There is no other assigned error demanding consideration, and the judgment is affirmed.

AFFIRMED.

[Opinion delivered April 18, 1884.]